# IN THE COURT OF APPEALS OF IOWA

No. 23-0123
Filed April 26, 2023

IN THE INTEREST OF C.H.,
Minor Child,

C.H., Father,
    Appellant,

A.T., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Shelby County, Charles D. Fagan,
District Associate Judge.

A mother and father separately appeal the termination of their parental
rights.  **AFFIRMED ON BOTH APPEALS.**

Matthew J. Hudson, Harlan, for appellant father.

Sara E. Benson of Meldrum & Benson Law, P.C., Council Bluffs, for
appellant mother.

Brenna Bird, Attorney General, and William E. Sales, III, Assistant Attorney
General, for appellee State.

William T. Early, Harlan, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

After almost two years of involvement, the juvenile court terminated the parental rights of the mother and father of two-year-old C.H. The parents separately appeal raising identical issues.[1]

I. **Delayed Appeal**

Before we address the merits of the parents' claims, we must address whether we may consider the father's appeal after he filed his petition on appeal two days late. *See* Iowa R. App. P. 6.201(3) ("If the petition on appeal is not filed with the clerk of the supreme court within 15 days after the filing of a notice of appeal or within 15 days after the filing of an order granting an interlocutory appeal, the supreme court shall dismiss the appeal, and the clerk shall immediately issue procedendo."). Following the father's late filing, the supreme court ordered the father to "file a statement . . . explaining why the appeal should not be dismissed as the appeal was not timely filed." Counsel for the father filed a responsive statement explaining the late petition on appeal resulted from a combination of counsel's own familial obligations and heavy caseload, the absence of a legal assistant who was on maternity leave, and a "calendaring miscalculation." Counsel also stated he

> was unable to contact the father and even went to the effort of driving to another town to [the father's] home to get his signature on the notice of [a]ppeal as emails were unanswered by the father regarding the potential basis for the [a]ppeal and his phone was unanswered

---

[1] It appears the father's petition on appeal uses almost identical language as the mother's petition on appeal and sometimes (presumably) inadvertently references the mother instead of the father. "To the extent these references were intended to raise arguments on the mother's behalf, we reject them, as the father has no standing to raise issues on the mother's behalf." *In re K.B.*, No. 22-1343, 2022 WL 17481399, at *1 n.1 (Iowa Ct. App. Dec. 7, 2022).

and voicemail messages were not able to be left to the father to assist in the basis for appeal.

We may grant a delayed appeal when (1) "the parent clearly intended to appeal," (2) "the 'failure to timely perfect the appeal was outside of the parent's control,'" and (3) "the delay was 'no more than negligible.'" *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021) (citation omitted). Based on the facts presented, the two-day delay here is "no more than negligible," so that requirement is satisfied.[2] *See id.* Instead, we have concerns with respect to the first and second requirements given counsel's statement that he had to drive to the father's home to secure his signature on the notice of appeal and then could not reach the father to discuss potential bases for the appeal. This leads us to question whether the father clearly intended to appeal and whether the father's lack of communication with counsel was a contributing factor in the "failure to timely perfect the appeal" through the filing of the petition on appeal. *See id.* However, the father may have believed no more was required of him after he signed the notice of appeal. And counsel conceded several personal and professional reasons, not related to any action or

---

[2] We find the two-day negligible, in part, because it is akin to a one-day delay due to the timing of events. The petition was due on February 9, which was a Thursday. The petition was filed on Saturday, February 11. The father could have filed his petition after the clerk's office closed on Friday, in which case it would have only been one day late. *See* Iowa Ct. R. 16.309(1)(c) ("A document is timely filed if it is filed before midnight on the date the filing is due."). Given that the clerk's office was not open to process the filing any time from the close of the clerk's office on Friday (February 10) until reopening for business on Monday (February 13), it makes no practical difference whether it was filed anytime between the close of the clerk's office on Friday until it reopened on Monday. *See In re B.W.*, No. 21-1810, 2022 WL 468945, at *6 (Iowa Ct. App. Feb. 16, 2022) (Ahlers, J., specially concurring) (factoring in the lack of practical difference in date of filing during a period when the clerk's office is closed in determining whether delay is negligible). Filing at any time within that window would have the same practical effect as filing at the earliest time in that window—in this case, one day late. *See id.*

inaction by the father, caused him to file the petition on appeal late. Given these facts, we conclude the father intended to appeal and the failure to timely perfect was outside the father's control. Accordingly, we grant the delayed appeal and proceed to the merits.

## II.    Merits

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the children's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge any of the three steps, we need not address it on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Both parents challenge the statutory grounds for termination.[3] Here, the juvenile court terminated their parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2022). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774

---

[3] Both parents also claim the State did not make reasonable efforts toward reunification. The reasonable-efforts requirement is not a strict substantive requirement, but it is part of the State's ultimate proof that the child cannot be returned to the parent. *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). So, a reasonable-efforts challenge is generally a component of a statutory-grounds challenge. However, we do not address either parent's reasonable-efforts challenge because it appears neither raised a reasonable-efforts challenge prior to the termination hearing, *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002), and neither identifies services that should have been provided and would have led to reunification, *In re C.E.*, No. 22-1179, 2022 WL 4362094, at *1 (Iowa Ct. App. Sept. 21, 2022).

(Iowa 2012). We elect to focus on section 232.116(1)(h) with respect to both parents. Termination under section 232.116(1)(h) requires proof that (1) the child is three years old or younger; (2) the child has been adjudicated as a child in need of assistance; (3) the child has been removed from the parent's custody for at least six of the previous twelve months; and (4) the child cannot be returned to the parent's custody at the time of the termination hearing.

Neither parent challenges the first three elements. Instead, both attack the fourth element by contending that the child could be returned to their respective care "at the time of the termination hearing or in the near future."[4] We reject this challenge.

As a preliminary observation, we note that both parents assert only that the child could be returned to their *care*, but section 232.116(1)(h)(4) requires proof that the child cannot be returned to a parent's *custody*. So, for example, even if the child could have been placed in the mother's *care* at her sober-living facility, the relevant question is whether the child could be returned to her *custody*. We do not make this observation about the blurring of the distinction between care and custody as a criticism of the parents. Indeed, we have most likely contributed to the blurring by being imprecise on the distinction at times. *See*, *e.g.*, *In re K.H.*, No. 22-0964, 2022 WL 3421910, at *2–3 (Iowa Ct. App. Aug. 17, 2022) (referring to the fourth element as imposing a requirement that the child cannot be returned to the care of a parent); *In re C.V.*, No. 18-0851, 2018 WL 4361061, at *1–2 (Iowa

---

[4] Both parents separately challenge whether the State "met [its] burden of proving by clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's [parent] as provided in section 232.102." That is what the State is required to establish in section 232.116(1)(h)(4).

Ct. App. Sep. 12, 2018) (same). But, even viewing the parents' challenges as claims that the child could be returned to their respective custody, we are not persuaded by their arguments. When assessing whether the fourth element is satisfied, we do not consider what might happen in the future; rather we consider only whether the child could be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

We conclude the child could not be returned to the custody of either parent. Both parents run into the same reunification barrier—methamphetamine use. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). These parents had more time to work toward reunification than statutorily required,[5] *see* Iowa Code § 232.116(1)(h)(3), yet neither has been able to establish a sustained period of sobriety through drug testing. The mother tested positive for methamphetamine as recently as September and October of 2022.[6] She entered a sober-living home one week before the termination hearing. While this is commendable, it is too late to establish that the child could be safely returned to her custody. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). The father tested positive for methamphetamine in February and June of 2021. He has not

---

[5] The parents had roughly twenty-two months to achieve reunification.
[6] The termination hearing was held in December 2022.

submitted to testing since that time. We understand the evidence suggests there were one or more instances when the father tried to test, only to find the testing facility closed.[7] But he missed nineteen testing opportunities and does not account for every one of those when attempting to explain away his failure to submit to drug testing. We presume the missed tests would have been positive for illicit substances. *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting missed tests are presumed positive for illegal substances). Given these facts, we cannot say either parent's relationship with methamphetamine is over or that the child can be safely returned to either parent's custody. *In re S.J.*, No. 20-1430, 2021 WL 811162, at *1 (Iowa Ct. App. Mar. 3, 2021); *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *1–3 (Iowa Ct. App. Apr. 15, 2020). A statutory ground for termination was met as to both parents.

Both parents also challenge the juvenile court's best-interests determination. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). Both parents limit their best-interests argument to this statement, "It would be detrimental to the well-being of the child should parental rights be terminated." We disagree. This two-year-old child has been in the care of his paternal grandmother for twenty months. The grandmother does well in meeting

---

[7] The father testified the testing center was closed on five occasions when he tried to test, but the social worker's report to the court only noted the father only complained the testing center was closed once in October 2022.

the child's needs, the child is bonded to the grandmother, and the grandmother is willing to adopt him. Termination is a necessary step to adoption, and adoption would give the child the safety and stability that all children deserve. Accordingly, we conclude termination with respect to both parents is in the child's best interests.

Because neither parent argues a permissive exception should apply, we end our analysis here and affirm the juvenile court on both appeals. *See In re J.D.*, No. 21-0391, 2021 WL 3379037, at *2 (Iowa Ct. App. Aug. 4, 2021).

**AFFIRMED ON BOTH APPEALS.**